UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CONNIE L. JACKSON,** *on behalf of herself and all similarly situated individuals*,

    **Plaintiff,**

v.

**TRANS UNION, LLC,**
SERVE:   Corporation Service Company, Reg. Agent
           100 Shockoe Slip
           2nd Floor
           Richmond, VA 23219

    **Defendant.**

Civil Action No. **3:24-cv-00572**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CONNIE L. JACKSON, by Counsel, on behalf of herself and all similarly situated individuals, brings the following Class Action Complaint against the Defendant TRANS UNION, LLC ("Trans Union"). In support of her Complaint, Plaintiff alleges as follows:

### INTRODUCTION

1. This is a consumer class action for damages, costs and attorney's fees under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") brought against Trans Union, a consumer-reporting agency that routinely violates the FCRA's basic protections by furnishing consumer credit reports to users for purposes outside of the narrowly defined reasons that are allowed under the FCRA.

2. Courts have long understood—and protected—the interest of individuals in guarding their right to privacy, including as it relates to sensitive personal information. "The right of privacy is invaded by:

    A. unreasonable intrusion upon the seclusion of another [], or

    B. appropriation of the other's name or likeness [], or

    C. unreasonable publicity given to the other's private life [], or

    D. publicity that unreasonably places the other in a false light before the public []"

Restatement (Second) of Torts § 652A (1977).

3. When Congress enacted the FCRA, it chose to codify consumers' rights to privacy as those rights relate to information found in consumer reports. Finding that reporting agencies "have assumed a vital role" in society, Congress sought to "insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a).

4. Two of the many "right to privacy" provisions enacted by Congress under the FCRA are § 1681b and § 1681e(a). Section 1681b prohibits a consumer reporting agency ("CRA") like Trans Union from furnishing a report to a user for any reason outside of those specified in that section. Section 1681e(a) requires CRAs (like Trans Union) to "maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under section 1681b."

5. This case arises because Trans Union routinely violates these FCRA provisions in its issuance of consumer reports to scam debt collectors like Liberty Credit Management, Inc. Trans Union sells consumer reports to sham debt collectors like Liberty Credit Management for

use in sending fraudulent dunning letters to consumers like Plaintiff. These reports are governed by the FCRA and may only be furnished for the purposes listed under 15 U.S.C. § 1681b.

6. In this instance, Trans Union used Plaintiff's information to furnish a consumer report regarding Plaintiff to Liberty Credit, and then Liberty Credit Management, in conjunction with an entity holding itself out as "Blackwater Legal Group," used the consumer report from Trans Union to generate and transmit a fraudulent dunning letter to Plaintiff. Any "purpose" behind Trans Union's report was clearly outside of the scope of the permissible reasons listed in § 1681b and furnishing a consumer report about Plaintiff for an impermissible purpose violated Plaintiff's right to privacy. If Trans Union had maintained procedures to avoid violations of § 1681b, as required by § 1681e(a), Trans Union would not have furnished the report to Liberty Credit Management.

7. Therefore, Plaintiff brings nationwide class claims against Trans Union for furnishing consumer reports under impermissible circumstances, in violation of 15 U.S.C. § 1681b.

8. Plaintiff also asserts a nationwide class claim against Trans Union under § 1681e(a), as it plainly has not implemented reasonable procedures designed to comply with § 1681b's strict requirements regarding the permissible circumstances for furnishing a consumer's sensitive information to a third party through a consumer report.

## JURISDICTION

9. The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is proper in this Division under L. Civ. R. 3(C) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Division.

## PARTIES

11. Plaintiff Connie L. Jackson is a natural person and former resident of Henrico County, Virginia. In or around November 2020, Plaintiff moved from Henrico County to Fayetteville, North Carolina, where she continues to reside. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

12. Trans Union is a limited liability company authorized to do business in Virginia through its registered agent in the City of Richmond, Virginia. Trans Union maintains a significant presence in this District through corporate offices located at 1906 Reston Metro Plaza, Suites 400, 500, and 600, Reston, Virginia 20190.

13. Trans Union is a consumer reporting agency that compiles and keeps files on consumers on a nationwide basis.

14. Trans Union maintains an extensive database of records regarding consumers. Trans Union routinely sells consumer reports generated from the database and furnishes these consumer reports to entities nationwide used to solicit business or attempt to collect debts, purported or legitimate, from consumers across the country.

## FACTS

15. Plaintiff is the victim of a fraudulent debt collection scheme, made possible by Trans Union's complete lack of care in furnishing consumer reports.

16. In September 2022, Plaintiff received a scam debt collection letter (the "Scam Collection Letter") from "Blackwater Legal Group" which listed its address as 700 East Main Street, #2487, Richmond, VA 23219. The Scam Collection Letter contained multiple abusive and deceptive (or outright false) statements:

    A. Plaintiff owed Blackwater Legal Group or Cashnet USA $980.76 for a line

of credit and "NSF Fraud."

  B. "Due to the severe delinquency of your previous line of credit account originating with CASHNET USA while working at or for CAPITAL ONE, we are now reviewing your account for immediate legal action (filing a lawsuit) against you, of which would result in a civil court judgment."

  C. "A civil judgment will immediately be reported to the credit bureaus and will be aggressively enforced."

  D. "In addition to the current balance owing on your account, any back interest, court costs and attorney fees will be added to this debt and the total amount in a lawsuit."

  E. "Civil judgments generally result in a wage garnishment and/or lien against personal property or bank account, depending on the applicable form of enforcement allowed by state law. Criminal charges are not usually pursued in civil court."

  F. "CAUSE OF ACTION TWO (2): Because you obtained this loan and immediately closed or changed your bank account, and because your check (ACH payment) was returned unpaid by your bank due to non-sufficient funds (NSF) for an amount greater than $100.00, we have noted your case with fraudulent activity and with a malicious intent to commit fraud."

  G. "We further reserve the right to subpoena the following reference(s) listed on the original application as witnesses to testify against you should this matter go to trial: * Undisclosed * Undisclosed."

  H. "It is very important that you pay the outstanding balance owing on your account no later than the due date referenced above."

  I. "If your payment is not received by our office by the due date, or if we do

not hear from you, our intent is to immediately have you served a court summons by the Cumberland County Sheriff's Office to appear in civil court for further action."

        J.      "FILED July 5, 2022 Filed Internally by CLERK OF: BLACKROCK."

        K.      "CC: U.S. District Court, Cumberland [and] Transunion credit bureau."

        L.      "Your Credit Score: 720."

        M.      "During this process, our intent is to run your credit report which will result in a hard inquiry being reported to the credit bureaus. A hard inquiry will significantly impact your credit score."

17.      The Scam Collection Letter requested Plaintiff to make payment to "Blackwater Legal Group, 700 E. Main Street. #2487-32575, Richmond, VA 23219."

18.      "Blackwater Legal Group" used the address above to mail fraudulent dunning letters to consumers like Plaintiff and receive payments from victimized consumers.

19.      Plaintiff owed nothing to "Blackwater Legal Group" or Cashnet USA.

20.      "Blackwater Legal Group" has no corporate existence.

21.      "Blackwater Legal Group" is a fake entity employed by one or more individuals who use the names Mitchell Evans, Mitchell Steven Evans, or Mitch Evans[1] to extort money from vulnerable consumers by using deceitful, abusive tactics to collect on bogus debts.

22.      Mitchell Evans also established Liberty Credit Management, Inc., a California corporation, on or about January 27, 2022. Mitchell Evans uses Liberty Credit Management to further his scamming of consumers.

23.      Scammers like Mitchell Evans need access to consumer reports to effectively

---

[1] For purposes of this Complaint, Plaintiff refers to the individual(s) behind the extortionate scheme to collect bogus debts from unsuspecting consumers as "Mitchell Evans."

pursue their fraudulent debt collection schemes.

24. Prior to the events giving rise to this case, Trans Union knew that scam debt collectors, to collect money from consumers for debts that the consumers do not owe, rely on illegally obtaining Trans Union credit reports and reporting bogus accounts to Trans Union to collect money from consumers for debts that the consumers do not owe.

25. But furnishing a consumer report to a third party is presumptively illegal. The only purposes for which a consumer reporting agency may furnish a report are the purposes listed in 15 U.S.C. § 1681b.

26. Unbeknownst to Plaintiff, Trans Union granted Mitchell Evans and Liberty Credit Management unfettered access to highly sensitive and federally protected consumer report information about her and numerous other consumers. Notwithstanding its robust obligation under the FCRA to protect consumer privacy, Trans Union made no real effort to vet Mitchell Evans and Liberty Credit Management before granting them access to purchase consumer reports.

27. Mitchell Evans and Liberty Credit Management used consumer reports obtained from Trans Union to prepare and send fraudulent dunning letters to Plaintiff and numerous other consumers.

28. After receiving the Scam Collection Letter, Plaintiff checked her credit reports and discovered an inquiry into her Trans Union credit file by Liberty Credit Management on or about August 19, 2022. The inquiry listed the location of Liberty Credit Management as "5161 Vallecito Ave, Westminster, CA 92683," which is a single-family residence in Orange County, California. The credit report Plaintiff obtained from Trans Union reflected that her current address was in Glen Allen, Virginia.

29. Presumably, Trans Union purported to furnish Plaintiff's consumer report(s) to

Liberty Credit Management pursuant to 15 U.S.C. § 1681b(a)(3)(A), which covers furnishing consumer reports "to a person which [Trans Union] has a reason to believe—intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." *Id*.

30. Plaintiff did not have any account with Liberty Credit Management, and Liberty Credit Management was not attempting to collect an account on behalf of Cashnet USA. Liberty Credit Management sought to collect phantom debt from Plaintiff, as it had no interest in any account for which Plaintiff was liable. Accordingly, Trans Union did not have a permissible purpose to issue a consumer report to Liberty Credit Management pursuant to 15 U.S.C. § 1681b(a)(3)(A). None of the other permissible purposes set out in 15 U.S.C. § 1681b could even conceivably apply to the issuance of a consumer report to Liberty Credit Management by Trans Union.

31. Trans Union did not take any steps to verify that Liberty Credit Management would only use Plaintiff's credit report(s) for a permissible purpose.

32. Even a cursory investigation into Liberty Credit Management by Trans Union would have revealed that it was not a legitimate debt collector.

33. Trans Union invaded Plaintiff's privacy and violated 15 U.S.C. § 1681b when it furnished the consumer report to Liberty Credit Management without a permissible purpose to do so. The consumer report Trans Union provided to Liberty Credit Management derived, in part, from data and information Trans Union collected from Virginia-based sources.

### *Defendant's Business Practices*

34. Discovery will show Trans Union produces millions of consumer reports each year in response to requests from scam debt collector subscribers (like Liberty Credit Management).

8

Trans Union produces these reports without obtaining consumer permission, and Trans Union never verifies that these subscribers are legitimate and owed anything by the consumers about whom the reports relate.

35. Discovery will reveal that Trans Union has no process in place to determine whether the "user" requesting the report (in this case, Liberty Credit Management) is doing so for a purpose that is permissible under 15 U.S.C. § 1681b. Trans Union simply obtains a request for a consumer report, generates that report, and furnishes it to the requesting business without any of the consideration required of it under 15 U.S.C. § 1681e(a).

### *Defendant Acted Willfully*

36. At all times relevant to this lawsuit, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Trans Union's conduct was intentionally accomplished through its intended procedures, and these procedures have continued despite the fact that Trans Union has been subject to court decisions and consumer complaints critical of similar conduct. Trans Union will continue to engage in this conduct because it believes there is more economic value in selling the greatest number of consumer reports possible than in creating procedures which comply with 15 U.S.C. § 1681e(a) and *only* furnishing reports in compliance with 15 U.S.C. § 1681b.

37. In addition, Defendant's willful conduct will also be established by the following:

A. Defendant has no substantive standardized procedure to ensure compliance with § 1681b, as required by § 1681e(a). At most, Defendant receives rubber-stamped certifications in which Defendant's customers—the consumer report "users"—simply tell Defendant that they are complying with the FCRA. Defendant accepts these "certifications" at face value and does not audit its "user" customers or conduct any follow-

up to ensure that its customers have procedures in place for compliance with 15 U.S.C. § 1681b. This failure is unreasonable and willful.

  B. Defendant's vetting processes, to the extent they exist at all, are woefully inadequate to differentiate between legitimate and illegitimate debt collectors. Defendant actually makes no effort to distinguish sham debt collectors from real debt collectors because it reaps profits regardless of whether a debt collector legally or illegally purchases consumer reports.

  C. The FCRA was enacted in 1970; Defendant has had decades to become compliant.

  D. Defendant is a corporation with access to legal advice through its own general counsel's office and/or outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful.

  E. Defendant knew or had reason to know that its conduct was inconsistent with FTC and CFPB guidance and enforcement actions, case law, and the plain language of the FCRA.

  F. Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

  G. Defendant's violations of the FCRA were repeated and systematic.

  H. Defendant's FCRA violations were carried-out according to Defendant's established policies and procedures; the violations alleged herein were not accidental or isolated to Plaintiff.

# CLAIMS FOR RELIEF

## COUNT I—FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681b
### Class Claim

30. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

31. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for violations of Section 1681b for herself and on behalf of a class (the "Impermissible Pull Class") defined as:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) in which Defendant furnished the report to a user pursuant to a certification asserting a permissible purpose under 15 U.S.C. § 1681b(a)(3)(A); and (d) where the user lacked any interest in or authority to collect on any account attributable to such person.

> Excluded from the class definition are any employees, officers, directors of Defendant Trans Union, any attorney appearing in this case, and any judge assigned to hear this action.

32. **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

33. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Trans Union furnished reports for purposes outside of 15 U.S.C. § 1681b; (2)

11

whether Trans Union's conduct constituted a violation of the FCRA; and (3) whether Trans Union's conduct was willful.

34. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

35. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with her counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor her counsel have any interest that might conflict with her vigorous pursuit of this action.

36. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Trans Union's conduct. By contrast, the class-action device will result in substantial benefits to

the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

37. Trans Union violated § 1681b of the FCRA as to the Plaintiff and each of the class members by furnishing consumer reports (the subject of which were Plaintiff and each of the class members) without a permissible purpose.

38. Plaintiff and each putative class member suffered real and actual harm and injury.

39. The rights at issue were determined by Congress to be important measures to ensure the protection of consumers' privacy as related to the consumer reports Trans Union generates and distributes.

40. In each instance, each class member's privacy was invaded when Trans Union furnished a report to a third party for a purpose outside of those allowed by Congress pursuant to § 1681b. Additionally, each class member was subjected to fraudulent debt collection activity as a result of Trans Union's impermissible issuance of a consumer report.

41. Trans Union's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Trans Union liable under 15 U.S.C. § 1681o.[2]

42. As a result of these FCRA violations, Trans Union is liable for statutory damages from $100 to $1,000 for Plaintiff and each class member, punitive damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681n.

**COUNT II—FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(a)**
**Class Claim**

---

[2] Plaintiff seeks statutory and punitive damages on behalf of herself and others. If class certification is denied, Plaintiff intends to seek actual damages for Defendant's violation.

43. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

44. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for violations of Section 1681e(a) for the same class identified above.

45. **Numerosity. Fed. R. Civ. P 23(a)(1).** Plaintiff estimates that the class is so numerous that joinder of all members is impractical. The class members' names and addresses are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

46. **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. The common questions include: (1) whether Trans Union had in place reasonable procedures designed to avoid violations of 15 U.S.C. § 1681b; (2) whether Trans Union's conduct constituted a violation of the FCRA; and (3) whether Trans Union's conduct was willful.

47. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same causes of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

48. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the putative class because Plaintiff's interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with her counsel, to continue to

prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor her counsel have any interest that might conflict with her vigorous pursuit of this action.

49. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Trans Union's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

50. As described above, Trans Union furnished a consumer report regarding Plaintiff and each of the putative class members for an impermissible purpose, invading the privacy of Plaintiff and the putative class members, in violation of § 1681b.

51. Trans Union violated § 1681e(a) of the FCRA as to the Plaintiff and each of the putative class members by lacking procedures to prevent the furnishing of consumer reports regarding Plaintiff and each of the putative class members in violation of § 1681b.

52. Trans Union had no procedures in place designed to prevent these violations, which is evident by the ease with which a scammer was able to obtain a consumer report about Plaintiff and each of the putative class members from Trans Union without a permissible purpose.

53. Plaintiff and each putative class member suffered real and actual harm and injury.

54. The rights at issue were determined by Congress to be important measures to ensure the protection of consumers' privacy as related to the consumer reports Trans Union generates and distributes.

55. In each instance, Trans Union had inadequate procedures in place (or no procedures in place at all) to prevent Trans Union from furnishing a report to a third party for reasons outside of those allowed by Congress pursuant to § 1681b.

56. Trans Union's conduct was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violation was negligent, rendering Trans Union liable under 15 U.S.C. § 1681o.[3]

57. As a result of these FCRA violations, Trans Union is liable for statutory damages from $100 to $1,000 for Plaintiff and each class member, punitive damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, on behalf of herself and the putative class members, moves for class certification and for statutory and punitive damages, as well as her attorney's fees and costs against the Defendant; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

---

[3] Plaintiff seeks statutory and punitive damages on behalf of herself and others. If class certification is denied, Plaintiff intends to seek actual damages for Defendant's violation.

Dated: August 12, 2024                    Respectfully submitted,

**CONNIE L. JACKSON**

By: ___/s/ Drew D. Sarrett___

Leonard A. Bennett (VSB No. 37523)
Craig Marchiando (VSB No. 89736)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Boulevard, 1-A
Newport News, Virginia 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
E-mail: lenbennett@clalegal.com
E-mail: craig@clalegal.com

Drew D. Sarrett (VSB No. 81658)
CONSUMER LITIGATION ASSOCIATES, P.C.
626 E. Broad Street, Suite 300
Richmond, Virginia 23219
Phone: (804) 905-9900
Fax: (757) 930-3662
E-mail: drew@clalegal.com

Stephen L. Flores (VSB No. 92900)
FLORES LAW, PLLC
530 E. Main Street, Suite 320
Richmond, Virginia 23219
Phone: (804) 238-9911
Fax: (804) 203-8717
E-mail: stephen@floreslawva.com