| | | |
|---|---|---|
| CONNIE L. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM & ORDER |
| | ) | |
| TRANS UNION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Class Certification of Claims Against Defendant Trans Union, LLC (Doc. No. 39). For the reasons explained below, the Court will grant Plaintiff's motion.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) requires that a proposed class satisfy four criteria in order to be certified as a class action: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Additionally, the Fourth Circuit has recognized that "Rule 23 contains an implicit threshold requirement" of "ascertainability." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019). Under this requirement, "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). Once these initial requirements of 23(a) are satisfied, a plaintiff must then demonstrate that the proposed class meets the requirements of at least one of the three types of class action

1

enumerated in Rule 23(b).

A plaintiff seeking class certification bears the burden of proof, *Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir. 1981), and must present evidence that the putative class complies with Rule 23. *EQT Prod. Co.* at 357. However, the Court "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *Id.* at 358 (quoting in part *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). To satisfy this obligation, the Court may "probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation and internal quotation marks omitted). Ultimately, the decision to certify a class action is within the discretion of the Court. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Connie L. Jackson alleges she was the victim of a debt collection scheme. (Doc. No. 53 ¶ 15). According to Plaintiff, as part of the scheme, Defendant Trans Union, LLC ("TransUnion" or "Defendant"), a consumer reporting agency, furnished a consumer report about Plaintiff to non-party Liberty Credit Management ("Liberty") in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA"). *Id.* ¶¶ 13, 26–33.

### A. Defendant's Relationship with Liberty

In September 2014, Mitchell Evans established Liberty, a sole proprietorship. *See* (Doc. No. 46-2 at 2–3). Shortly thereafter, Liberty—through Evans—submitted

2

an application to receive credit reports as a TransUnion subscriber. *See* (Doc. Nos. 46-1 at 6; 46-2 at 2–3). Liberty represented itself as a debt collector (Doc. No. 46-2 at 2) and informed Defendant that it intended to use credit reports "[i]n connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account to the consumer." (Doc. No. 46-3).

Before permitting Liberty to obtain consumer reports, Defendant credentialed Liberty. (Doc. No. 46-1 at 12). As part of that process, Defendant performed a series of checks to evaluate whether Liberty's intended purpose to access consumer reports aligned with a permissible purpose under the FCRA. *See id.* at 5. Among other things, Defendant reviewed Liberty's application and conducted an on-site inspection of Liberty's physical address. *Id.* at 6–7. Defendant and Liberty also executed a Master Subscriber Agreement, certifying that Liberty would not access consumer reports without a permissible purpose. *Id.* at 7. At the time of Liberty's credentialling in 2014, Defendant was unable to find any website or Google results for Liberty. (Doc. No. 42-4 at 3). Defendant later recredentialed Liberty on at least one occasion in 2019. (Doc. No. 46-1 at 12). Between 2020 and 2025, Defendant sold Liberty over 800,000 consumer reports.[1] *See* (Doc. No. 42-11 at 3–5).

## B. Plaintiff's Experience

In or about September 2022, Plaintiff received a debt collection letter from

---

[1] Plaintiff's allegations concern Defendant's collection prioritization engine ("CPE") reports. CPE reports aid debt collectors in prioritizing accounts for collection. (Doc. Nos. 46-7 at 9:18–10:1; 46 at 4).

Blackwater Legal Group ("Blackwater"). *See* (Doc. No. 40-2 at 2). In the letter, Blackwater claimed Plaintiff owed $980.76 for a line of credit and fraudulent bank activity. *Id.* Unless Plaintiff paid, Blackwater threatened "immediate legal action" and warned that it would run Plaintiff's credit report, which would "significantly impact [Plaintiff's] credit score." *Id.* According to Plaintiff, Plaintiff owed nothing to Blackwater (Doc. Nos. 53 ¶ 19; 40-21 ¶ 6). After receiving the letter, Plaintiff obtained her TransUnion credit report and saw an inquiry from Liberty on August 19, 2022. (Doc. No. 40-3 at 2).

### C. FTC Action and Debt Collection Scheme

On February 24, 2025, the FTC filed a sealed complaint (the "FTC Complaint") in the United States District Court for the Central District of California.[2] (Doc. No. 40-1). The FTC Complaint alleged that Liberty and Evans, among others (the "FTC Defendants"), violated, among other things, the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") by deceiving and threatening consumers into paying debts that consumers did not actually owe or the FTC Defendants did not have authority to collect. (Doc. No. 40-1 at 3–4). According to the FTC Complaint, "Defendants' fraudulent scheme include[d] sending consumers letters representing that (1) consumers owe some purported amount from an outstanding payday loan; (2) Defendants are law firms and plan on imminently filing a lawsuit; (3) consumers' credit scores are being damaged due to these purportedly outstanding debts; and (4)

---

[2] Compl., *FTC v. Blackrock Services, Inc.*, No. 8:25-cv-00363-HDV-ADSx (C.D. Cal. Date), (Doc. No. 1).

consumers can avoid a lawsuit if they pay to settle the purported debt." *Id.* ¶ 3.

The court subsequently issued an *ex parte* temporary restraining order freezing the FTC Defendants' assets and appointing a receiver (the "Receiver"). (Doc. No. 40-6). On March 13, 2025, the Receiver filed a preliminary report with the court. (Doc. No. 40-7). The report detailed how Evans and his brother Ryan ran parallel debt collection operations through multiple companies including Liberty. (Doc. No. 40-7 at 10, 13–15). Under their business model, the FTC Defendants bought debt from a broker and "'scrub[bed]' [the debt] for bankruptcy via TransUnion and obtain[ed the] consumer's personal information." *Id.* at 14. The FTC Defendants then sent letters demanding payment and threatening litigation. *Id.*

According to the report, Evans acknowledged renting Liberty's office "only to satisfy TransUnion's physical office requirement." (Doc. No. 40-7 at 14). The Receiver described the office as "tiny, with no equipment, no files, and no personnel." *Id.* at 4. Evans and his brother also acknowledged that they had not paid taxes in several years and did not use accounting software. *Id.* at 8. Ultimately, the Receiver concluded that "[u]nlawful practices" had been central to the FTC Defendant's debt collection process for years and that they were "incapable of operating a compliant debt collection operation." *Id.* at 5. The Receiver also noted that the Evans brothers destroyed data and records related to their scheme. *Id.* at 5, 9–11.

### D. Plaintiff's Lawsuit

On August 12, 2024, Plaintiff filed this lawsuit asserting claims against Defendant for violating the FCRA when it provided Liberty a copy of her Report. (Doc.

No. 1 ¶¶ 5–6). In the Complaint, Plaintiff seeks to represent a class for Defendant's

alleged violations of Sections 1681b and 1681e(a), defined as:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant; (b) in the five years predating the filing of this Complaint and continuing through the date which the class list is prepared; (c) in which Defendant furnished the report to a user pursuant to a certification asserting a permissible purpose under 15 U.S.C. § 1681b(a)(3)(A); and (d) where the user lacked any interest in or authority to collect on any account attributable to such person.
>
> Excluded from the class definition are any employees, officers, directors of Defendant Trans Union, any attorney appearing in this case, and any judge assigned to hear this action.

(Doc. No. 1 at 11, 14).

On May 20, 2025, Plaintiff moved for class certification. (Doc. No. 39). On June

23, 2025, Plaintiff filed an Amended Complaint and refined the proposed class to:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant; (b) on or after August 12, 2019 and continuing through the date on which the class list is prepared; (c) in which the Trans Union subscriber showing in Defendant's records is Liberty Credit Management.
>
> Excluded from the Class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

(Doc. No. 53 at 11). The Court held a status conference on April 21, 2026, and

questioned the parties on the outstanding motions in this case.

6

## III. DISCUSSION

### A. Merits Arguments and the FCRA

Defendant opens its brief by arguing the merits of the case. (Doc. No. 46 at 17–19). However, the "likelihood of the plaintiff['s] success on the merits . . . is not relevant to the issue of whether [class] certification is proper." *Thorn v. Jefferson-Pilot Life Ins.* Co., 445 F.3d 311, 319 (4th Cir. 2006). As the Supreme Court explained, a court's "rigorous" class-certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351). But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 466. Instead, a court should only consider merits arguments to the extent they "are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

Accordingly, the Court will not opine on Plaintiff's likelihood of success and will consider the merits only to the extent they are relevant to the Court's class certification analysis. With that principle in mind, the Court now turns to the relevant legal framework.

The FCRA restricts Consumer Reporting Agencies' ("CRAs") ability to provide consumers' credit information to third parties. In particular, under Section 1681b of the FCRA, CRAs may only furnish consumer reports for "certain statutorily enumerated purposes." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001) (citing 15 U.S.C. § 1681b)). Relevant to this case, CRAs may furnish consumer reports:

7

> To a person which it *has reason to believe*—
> intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer.

15 U.S.C. § 1681b(a)(3)(A) (emphasis added). Whether a consumer report is ultimately used for an enumerated purpose—often called permissible purpose—is not determinative of a CRA's liability under § 1681b. *See Bugoni v. Emp. Background Investigations, Inc.*, No. CV SAG-20-1133, 2022 WL 888434, at \*4 (D. Md. Mar. 25, 2022), *aff'd*, No. 22-1548, 2023 WL 3721210 (4th Cir. May 30, 2023).

The FCRA also requires CRAs to maintain reasonable procedures to limit the furnishing of consumer reports to the permissible purposes in § 1681b. 15 U.S.C. § 1681e(a). Section 1681e(a) provides:

> Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

15 U.S.C. § 1681e(a).

Any person who willfully fails to comply with the FCRA is liable to the

consumer for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a)(1). The consumer may also recover "such amount of punitive damages as the court may allow." *Id.* § 1681n(a)(2).

### B. Plaintiff's Proposed Class Definition

As a threshold matter, Defendant argues in its opposition that the Court should not consider Plaintiff's unpled class definition. (Doc. No. 46 at 19–22). Since the filing of the Motion, Plaintiff amended her Complaint to include a revised class definition consistent with her motion to certify. *See* (Doc. No. 53). Defendant's argument is, therefore, moot. Accordingly, for the purposes of this Motion, the Court analyzes Plaintiff's proposed class definition from her Amended Complaint:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant; (b) on or after August 12, 2019 and continuing through the date on which the class list is prepared; (c) in which the Trans Union subscriber showing in Defendant's records is Liberty Credit Management.
>
> Excluded from the Class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

(Doc. No. 53 at 11).

### C. Rule 23 Requirements for Class Certification

The Court now turns to class certification. Rule 23(a) sets four criteria for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Additionally, the Fourth Circuit has recognized that "Rule 23 contains an implicit threshold requirement that the members of a proposed

9

class be 'readily identifiable.'" *Krakauer*, 925 F.3d at 654–55 (quoting *EQT Prod. Co.*, 764 F.3d at 358). The Court discusses each requirement below.

### 1. Numerosity

Rule 23 requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff estimates that the proposed class is over 800,000, and in its opposition, Defendant does not contest that the proposed class satisfies Rule 23's numerosity requirement. Based on the record, the Court finds that Plaintiff has met the numerosity requirement.

### 2. Ascertainability

In order to be certified, a class must also be ascertainable. This "mean[s] a court can readily identify the class members in reference to objective criteria." *Glover v. EQT Corp.*, 151 F.4th 613, 621 (4th Cir. 2025). "[I]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). However, a plaintiff "need not be able to identify every class member at the time of certification." *Id.*

Here, the Court finds the class members are readily identifiable. Plaintiff seeks to certify a class of individuals who were the subject of a report sold by Defendant "in which the Trans Union subscriber showing in Defendant's records is Liberty Credit Management." (Doc. No. 53 at 11). Defendant maintains both electronic inquiry and billing records, which would allow Defendant to identify the subjects of reports sold by Defendant to Liberty. (Doc. No. 42-1 at 3–5).

10

Defendant argues, however, that the class is not ascertainable because Plaintiff cannot further identify which reports were subsequently shared by Liberty with its "co-conspirators or to identify the recipients of fraudulent dunning letters sent by [those] co-conspirators and Blackrock . . . ." (Doc. No. 46 at 22). Defendant notes that according to the Receiver's Report in the FTC Action, the FTC Defendants destroyed relevant evidence. *Id.* And in some instances, Liberty may have owned or have been authorized to collect consumer debt. *Id.* In sum, Defendant argues that the class is not ascertainable because there is a possibility Liberty may have had a permissible purpose for acquiring some reports or Liberty's co-conspirators may not have used all reports as part of the fraudulent scheme.

The Court disagrees for two reasons. First, the record does not establish Liberty ever purchased a report for a permissible purpose. In fact, the Receiver Report—which is relied upon by both parties—concluded that "[u]nlawful practices" had been central to the FTC Defendant's debt collection process for years and that they were "incapable of operating a compliant debt collection operation." (Doc. No. 40-7 at 5). But even assuming Defendant's hypothetical held some merit, "ascertainability does not require that every member of the class must be knowable to an absolute certainty." *Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 334 (W.D.N.C. 2020). In other words, Plaintiff need not disprove every hypothetical in order to meet her burden on ascertainability.

Second, Defendant's argument conflates the threshold question of whether the proposed class members are identifiable with Rule 23's commonality and typicality

11

requirements. Defendant appears to be arguing that the proposed class is not ascertainable because Plaintiff cannot identify and then prove that each proposed class member had the exact same experience as Plaintiff. Specifically, after receiving the report, Liberty improperly shared the proposed class member's consumer report with its co-conspirator, and the co-conspirator then sent a fraudulent dunning letter to the consumer. As discussed below, whether a proposed class is ascertainable is a separate inquiry from whether there are questions common to a class or whether a representative's claims or defenses are typical of the class. Here, because the Court is able to readily identify the proposed class members in reference to objective criteria, the ascertainability requirement is satisfied.

### 3. Commonality

Rule 23 further requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012) (internal quotation marks omitted)). "Common questions suffice for class certification where the 'determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Spurlock v. Wexford Health Sources, Inc.*, 175 F.4th 232, 246–47 (4th Cir. 2026) (quoting *Dukes*, 564 U.S. at 350). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 350–51

12

(citation omitted).

Plaintiff has advanced at least three questions that fulfill Rule 23's commonality requirement. First, whether Defendant had "reason to believe" Liberty had a permissible purpose in obtaining the report. *See* 15 U.S.C. § 1681b(a)(3).[3] Second, whether Defendant maintained reasonable procedures designed to limit the furnishing of consumer reports to permissible purposes under the FCRA. Third, whether Defendant's purported violations were willful under 15 U.S.C. § 1681n.

Here, the Court finds these questions satisfy Rule 23's commonality requirements. With respect to the first question—whether Defendant had "reason to believe" Liberty had a permissible purpose in obtaining the report—Defendant concedes in its brief that under the FCRA, "[t]he ultimate use by the recipient of the consumer's information is not determinative of the consumer reporting agency's liability." (Doc. No. 46 at 17). Therefore, the Court need not undertake an individualized assessment of what occurred with a specific report. Instead, the question will be answered by common evidence showing what Defendant knew about Liberty when it approved its application through its credentialing process in 2014 and what Defendant may have subsequently learned about the company.

In fact, Defendant's own merits argument demonstrates that whether Defendant has a "reason to believe" is a common question. In its brief, Defendant argues that Defendant had reason to believe Liberty "was requesting consumer

---

[3] The Court has revised the questions in its analysis to more accurately reflect the applicable legal standards. For example, in its brief, Plaintiff asserts, "[i]t is a common question whether or not Trans Union had a permissible reason to sell class member reports to Liberty." (Doc. No. 42 at 15).

reports only when it had a permissible purpose" because (1) Defendant credentialed Liberty, (2) Liberty certified it was debt collector each time it requested a report, (3) Liberty contractually agreed it would only request reports when it had a permissible purpose, and (4) there was no evidence Defendant knew Liberty was not using consumer reports for permissible purposes. (Doc. No. 46 at 18). Each of these arguments would apply to each proposed class members' claims. And if Defendant's position is correct, all class members' Section 1681b claims fail—not just Plaintiff's. Similarly, whether Defendant had reasonable procedures or Defendant acted willfully will be resolved based on the same common facts (*e.g.* the same procedures) and the same law for every class member.

Relying on *Stafford v. Bojangles' Rests., Inc*, 123 F.4th 671 (4th Cir. 2024), Defendant argues that the putative class is too overinclusive to ensure commonality. (Doc. No. 46 at 25–26). However, Defendant's reliance on *Stafford* is misplaced. In *Stafford*, the Fourth Circuit vacated and remanded the district court's certification of a class action involving allegations of unpaid off-the-clock work and unauthorized edits to employee time records. 123 F.4th at 675. As the Fourth Circuit explained, the classes' "sole defining characteristic" was that they contained "shift managers who worked for the company during a three-year period" in either North or South Carolina. 123 F.4th at 681. The district court found commonality based on the application of a generalized policy to all class members across both states. *See id.* at 679–80. Specifically, the court estimated that 80% of prospective class members likely worked an opening shift during the relevant time period and therefore had conducted

14

off-the-clock pre-shift work while completing tasks on a common checklist. *Id.* at 679. The Fourth Circuit reversed, finding that "conclusory assertions" of the application of "some highly generalized company policy" were insufficient to show commonality across the class. *Id.* at 680.

Applying *Stafford* to the facts of this case is a poor fit. The district court found commonality in *Stafford* based on the application of a general policy to the work experiences of numerous employees across two states and in multiple stores. Here, the inquiry is narrowly focused on Defendant's actions or inactions related to a single entity—Liberty—which are dispositive of the proposed class members' claims. Further, the Court's class definition that is the subject of this Order limits the class to consumers for whom a CPE report was provided to Liberty, a smaller category than Plaintiff proposed. Accordingly, the Court finds the common questions of law and fact in this case satisfy the commonality requirement.

### 4. Typicality

Next, Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)).

The Court finds that Plaintiff's claims are typical of her fellow class members. Plaintiff will pursue her claims under the FCRA based on evidence of (1) whether

Defendant had sufficient information to form a reason to believe Liberty would use the report for a permissible purpose; (2) whether Defendant's procedures were reasonable; and (3) whether any alleged violations were willful. Plaintiff's claims will rise or fall on the same evidence as all other class members. Similarly, Defendant's defenses are typical across all the class members. Indeed, all class members' claims fail if Defendant had reason to believe Liberty was using reports for permissible purposes and its procedures were reasonable—regardless of whether Liberty ultimately used all or some of the reports for impermissible purposes.

### 5. Adequacy

Federal Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In its opposition, Defendant does not contest the adequacy of Plaintiff or her counsel to represent the class. Based on the record, the Court similarly finds that they will fairly and adequately represent the proposed class. Plaintiff has met her burden under Rule 23(a).

### D. Rule 23(b)(3) Requirements

Because all Rule 23(a) requirements are satisfied, Plaintiff now "bears the burden of demonstrating that the proposed class fits into one of the specific forms of class adjudication provided by Rule 23(b)." *Krakauer*, 925 F.3d at 655. Here, Plaintiff asserts that the proposed class satisfies Rule 23(b)(3)'s requirements, as "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

16

fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 26(b)(3). The Court analyzes each factor.

### 1. Predominance

Predominance and commonality are intertwined. *Stafford*, 123 F.4th at 679. "Predominance presupposes that a common question exists and measures the question's significance to the pending litigation." *Id.* "While commonality serves to ask whether class-wide proceedings are even possible, predominance 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) and *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004)). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (citation omitted).

Here, the Court finds the predominance factor is satisfied. Common questions as to whether Defendant had reason to believe Liberty would use the reports for a permissible purpose, whether Defendant's procedures were reasonable, and whether Defendant's actions were willful predominate over any issues specific to individual class members. Defendant's argument to the contrary is unavailing.

17

Defendant relies on *Mott v. Trinity Fin. Servs. LLC,* No. 2:1-cv-01754, 2018 WL 7501128 (D. Nev. Sep. 27, 2018). Defendant argues that Plaintiff cannot satisfy predominance, because "whether TransUnion reasonably believed that [Liberty] had a permissible purpose to obtain each putative class member's report is an individualized inquiry." (Doc. No. 46 at 30). But *Mott* is not binding on this Court, and even if it were, the case is inapposite. *Mott* concerned the liability of a user of a credit report under a different provision of the FCRA—not the liability of a CRA like TransUnion. 2018 WL 7501128, at *1. The district court did not apply or even consider the "reason to believe" standard. *Id.* at *1–2. Additionally, as previously explained, whether TransUnion had reason to believe Liberty had a permissible purpose in requesting credit reports does not require an individualized inquiry.

### 2. Superiority

In deciding whether a class action is superior to other methods of litigation, courts consider, among other things, the Rule 23(b)(3) factors: "(A) class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun . . . ; (C) the desirability or undesirability of concentrating the litigation in this . . . forum and (D) the likely difficulties in managing a class action . . . ." *Cheng v. Liu*, No. 23-1806, 2024 WL 3579606, at *4 (4th Cir. July 29, 2024) (quoting Fed. R. Civ. P. 23(b)(3)), *cert. denied*, 145 S. Ct. 1139 (2025). With these factors, the Court is comparing "the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class

action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010) (quoting 7AA Wright & Miller's Fed. Prac. & Proc. § 1779 (3d ed. 2005)).

Here, given the common predominant questions of law and fact, it is far more efficient and manageable to resolve these issues through a class action. Moreover, the record does not demonstrate that class members have a strong interest in individual litigation in this case. The FCRA provides for statutory damages for willful violations of "not less than $100 and not more than $1,000" along with "such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n(a). Given this modest recovery compared to the time and expense of litigation, it is unsurprising that no other cases have been filed arising under the same set of circumstances.[4] A class action will also help promote consistency of results. Neither party has suggested the current forum is undesirable, and this factor is neutral. Based on the Rule 23(b)(3) factors and the record, the Court finds Plaintiff has satisfied the superiority requirement.

### E. Appointment of Counsel

Having concluded that Plaintiff has met her burden on class certification under Rule 23, the Court must appoint counsel under Rule 23(g). Fed. R. Civ. P. 23 (c)(1)(B). When appointing class counsel, the Court must consider the work counsel has done in identifying or investigating the potential claims, counsel's relevant experience and knowledge of the applicable law, and the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Also, the Court may consider any

---

[4] *See* (Doc. No. 46 at 30).

19

other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B).

Here, the Court has considered all the Rule 23(g)(1) factors and the record in this case. *See e.g.* (Doc. Nos. 40-19, 40-20). The Court finds that Plaintiff's counsel will fairly and adequately represent the interests of the class and appoints them as class counsel.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1.  Plaintiff's Motion for Class Certification of Claims Against Defendant Trans Union LLC (Doc. No. 39) is **GRANTED**, and the case shall proceed as a class action under Federal Rule of Civil Procedure 23(b)(3);

2.  Plaintiff Connie Jackson is designated as class representative;

3.  The class for Plaintiff's Claims is defined as:

    > All natural persons residing in the United States (a) who were the subject of a CPE report sold by Defendant; (b) on or after August 12, 2019 and continuing through the date on which the class list is prepared; (c) in which the Trans Union subscriber showing in Defendant's records is Liberty Credit Management.
    >
    > Excluded from the Class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

4.  The law firms of Consumer Litigation Associates, P.C. and Flores Law, PLLC,  who are the attorneys of record for the appointed class representative, are hereby **APPOINTED** to serve as class counsel; and

20

5. The Court **DIRECTS** the parties to confer and submit, within fourteen (14) days, a jointly prepared draft Notice to the class consistent with this order and Rule 23(c)(2).

**SO ORDERED.**

Matthew E. Orso
United States District Judge